Lonnie R. BLUE, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. B-78-210.

United States District Court, D. Connecticut.

July 14, 1983.

Keith Dunnigan, Kevin Murphy, Bai, Pollock & Dunnigan, Bridgeport, Conn., for plaintiffs.

Frank Santoro, Asst. U.S. Atty., Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., for defendant.

## RULING ON MOTION TO DISMISS AS TO WALTER TYSON

DALY, Chief Judge.

Mr. Walter Tyson is one of 54 inmates injured in a fire at the Federal Correctional Institution (FCI) at Danbury the night of July 7, 1977. They brought a civil action for negligence against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* In the first phase of trial the government's liability was established. *See* Memorandum of Decision, May 11, 1981. In the second phase damages were determined for 11 randomly selected plaintiffs. *See* Memorandum of Decision, September 27, 1982. Mr. Tyson was among those 11 plaintiffs. After the trial on the second phase, but before the Court's decision had been rendered, the government · moved to dismiss Mr. Tyson's claim pursuant to Rule 12(b)(1) of the Fed.R. of Civ. Pro., asserting that Tyson failed to present an administrative claim to the appropriate federal agency (in this case, the Bureau of Prisons) as required by 28 U.S.C. § 2675, and that such failure divests this Court of subject matter jurisdiction over this claim. In addition, the government asserts that Tyson's alleged failure to present a proper administrative claim within the two-year statute of limitations set forth in 28 U.S.C. § 2401, forever bars him from pursuing his claim.

It is well settled that the United States, as sovereign, is immune from suit without its consent and that such consent can be given only through waiver by Congress. See Wright, Miller and Cooper, *Federal Practice and Procedure,* Civil § 3654 (1976). The terms of that consent define the jurisdiction of the court and those terms have been construed narrowly as is "appropriate

in the case of a waiver of sovereign immunity." *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941); *see also Honda v. Clark*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); *Battaglia v. U.S.*, 303 F.2d 683, 685 (2d Cir.1962).

The prerequisites to a court action under the FTCA are set out in 28 U.S.C. § 2675(a):

"An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

The Second Circuit has not yet issued a definitive decision as to whether a failure to exhaust the administrative procedures specified in § 2675(a) constitutes a jurisdictional bar to a court action. In *Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97 (2d Cir.1981) the Court of Appeals alluded to the issue but left it unresolved.[1] *Cf. House v. Mine Safety Appliances Co.*, 573 F.2d 609, 614 (9th Cir.1978); *Lunsford v. United States*, 570 F.2d 221 (8th Cir.1977); *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir.1975); *Executive Jet Aviation, Inc., v. United States*, 507 F.2d 508 (6th Cir. 1974); *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir.1972); *Bialowas v. United States*, 443 F.2d 1047 (3d Cir.1971) (holding that compliance with § 2675(a) is a jurisdictional prerequisite to an FTCA suit).

Assuming that the exhaustion requirement of § 2675(a) *is* a jurisdictional prerequisite, precisely what must be done to clear the jurisdictional hurdle is far from settled. *Compare Adams v. United States*, 615 F.2d 284 (5th Cir.) *clarified*, 622 F.2d 197 (5th Cir.1980); and *Avery v. United States*, 680 F.2d 608 (9th Cir.1982) *with Swift v. United States*, 614 F.2d 812 (1st Cir.1980). *See also Douglas v. United States*, 658 F.2d 445 (6th Cir.1981) which attempts to harmonize the *Adams* case with *Swift.*

The exhaustion procedures of the FTCA were added by Congress in 1966 for two reasons. Act of July 18, 1966, Pub.L. No.

---

1. In *Contemporary Mission*, the Court of Appeals ruled as follows:

"The district court correctly ruled that appellant's failure to present its claim to the Postal Service and receive a final administrative determination prior to asserting the claim in the district court mandated dismissal. 28 U.S.C. § 2675(a) (1976). See *Grasso v. United States Postal Service* ... 438 F.Supp. [1231] at 1237 [ (D.Conn.1977) ]. Moreover, the district court correctly determined that it lacked subject matter jurisdiction over the claims against the United States Postal Service that were based upon certain postal officials' alleged interference with the plaintiff's constitutional rights. The waiver of sovereign immunity contained in 28 U.S.C. § 1346(b) (1976) is limited to suits predicated upon a tort cause of action cognizable under state law."
648 F.2d at 105, n. 9.
The Court of Appeals appears to have approved Judge Blumenfeld's dismissal of the complaint in *Grasso, supra*, for plaintiff's failure to comply with § 2675(a) without specifically stating whether such failure constituted a jurisdictional bar, while at the same time explicitly affirming the *Contemporary Mission* trial court's determination that it lacked subject matter jurisdiction under 28 U.S.C. § 1346(b) because the suit was not one predicated upon a tort cause of action cognizable under state law. The *Grasso* dismissal was premised on alternative grounds—*i.e.* the failure to exhaust administrative remedies and the fact that the waiver of sovereign immunity set forth in 28 U.S.C. § 1346(b) did not extend to claims based upon the discretionary acts of federal employees, *see Grasso*, 438 F.Supp. at 1237, n. 8—making it unclear precisely what the Court of Appeals approved in *Contemporary Mission*. Moreover, although Judge Blumenfeld stated in his *Grasso* opinion that plaintiffs failure to comply with § 2675(a) was "enough to defeat the jurisdiction of this court," 438 F.Supp. at 1237, n. 8, he also implied that if plaintiffs had had some reasonable explanation for their failure, the complaint might not be dismissed, 438 F.Supp. at 1237 (text), thus leaving the jurisdictional door ajar for considerations of equity.

89–506, 80 Stat. 306. The purpose was not to make recovery from the government more difficult but, instead, first to "ease court congestion and avoid unnecessary litigation, while making it possible for the government to expedite the fair settlement of tort claims asserted against the United States," and second, to provide "for more fair and equitable treatment of private individuals and claimants when they . . . are involved in litigation with their government." S.Rep. No. 1327, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin. News, pp. 2515–2516.

■ Given these two congressional purposes, this Court agrees with the Fifth Circuit's reasoning in *Adams v. United States,* 615 F.2d 284 (5th Cir.), *clarified,* 622 F.2d 197 (5th Cir.1980), that the jurisdictional requirements of § 2675(a) are satisfied when the appropriate agency is given sufficient written notice of the circumstances of the underlying incident to enable it to investigate the claim and respond by settlement or defense. 615 F.2d at 289; 622 F.2d at 197.[2] In most instances, adequate notice must include both a statement of the factual details of the underlying incident and a demand for a sum certain in damages. *See id.; cf.* 28 U.S.C. § 2675(b) (providing that a federal court action may not be instituted for a sum in excess of the amount of the claim presented to the federal agency); 28 C.F.R. § 14.2(a) (defining, for purposes of the administrative settlement provision of the statute, 28 U.S.C. § 2672, when a claim is "presented" to an agency). Notice that includes both a statement of the facts and a demand for a specific amount of damages would inform the agency of the claim, give it sufficient information to investigate, and enable it to ascertain whether the claim could or should be settled.

■ In the case at bar, although Mr. Tyson never submitted a completed "Standard Form 95" (the government form usually sent to the appropriate agency regarding a tort claim against the U.S.) to the Bureau of Prisons,[3] he did provide a sworn statement to a caseworker at F.C.I., Danbury on July 13, 1977, 6 days after the prison fire, in which he set forth the details of his injuries, the circumstances under which they occurred, and his assertion that these injuries were caused by "negligence" and "a complete lack of training in response to emergency situations on the part of the Correctional Officers concerned." (Exhibit A, attached to Tyson's Memorandum In Opposition To Defendant's Motion to Dismiss, Oct. 22, 1982.) Two separate federal investigations of the causes and consequences of the fire were conducted: The first, conducted by a Board of Inquiry appointed by the director of the Bureau of Prisons, sought to establish, among other things, the extent of injuries to Danbury's inmates. The Board's report identified Tyson as one of those injured in the fire. In addition, Tyson was one of the inmates interviewed by the government in the U.S. Comptroller General's investigation, the second of the two governmental inquiries into the fire. Furthermore, Tyson, along with the other injured inmates, was brought by prison authorities to Danbury Hospital for initial treatment, and thereafter released to the prison infirmary for further treatment of his injuries. The medical reports and itemized bills concerning his injuries and treatment originated with and remain in the possession of the government. The government thus had complete notice of the facts and circumstances of the prison fire and of the nature and extent of Tyson's injuries through Tyson's sworn statement (which included an allegation of negligence on the part of prison personnel), its own investiga-

2. *See also Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508, 515 (6th Cir.1974).

3. *See* 28 C.F.R. § 14.2(a). Mr. Tyson apparently did fill out a Standard Form 95, although when he did so is undeterminable since the copy supplied to the Court by his attorney is undated. In any event, such form was appar-

ently never sent to or received by the Bureau of Prisons, *see* Government's Memoranda in Support of its Motion to Dismiss and accompanying affidavits, of Ira B. Kirschbaum, Assistant General Counsel to the Bureau of Prisons, filed May 3, 1982, and September 22, 1982.

tions, and its self-generated medical reports.[4]

As noted, *supra*, adequate notice for purposes of § 2675(a) ordinarily must include a demand for a specific amount of damages to enable the government to better evaluate the claim and to facilitate settlement. *See, Adams, supra;* 28 C.F.R. § 14.2(a). Tyson never supplied the Bureau of Prisons with a demand for a "sum certain" in damages.

The absence of a statement of the amount of the claim might, in the typical case, be sufficient reason to dismiss a complaint. *See e.g., Allen v. U.S.,* 517 F.2d 1328 (6th Cir.1975); *Caton v. U.S.,* 495 F.2d 635 (9th Cir.1974); *Melo v. U.S.,* 505 F.2d 1026 (8th Cir.1974); *Jordan v. U.S.,* 333 F.Supp. 987 (E.D.Pa.1971), *aff'd without opinion,* 474 F.2d 1340 (3rd Cir.1973); *Cooper v. U.S.,* 498 F.Supp. 116 (W.D.N.Y. 1980); *Hlavac v. U.S.,* 356 F.Supp. 1274 (N.D.Ill.1972). However, given the particular facts of *this* case, to grant the government's motion to dismiss on the sole ground that this plaintiff failed to submit a demand for a sum certain in damages would work a grave injustice, elevate form over substance, and subvert the beneficial purpose of § 2675(a) to provide "for more fair and equitable treatment of private individuals and claimants when they ... are involved in litigation with their government." S.Rep. No. 1327, 89th Cong. 2d Sess. (1966), U.S.Code Cong. & Admin.News, pp. 2515–16.

In this case, the plaintiff was at all relevant times a ward of the government; the fact, nature and extent of his injuries were well known to the government; the medical data regarding Tyson's injuries were peculiarly within the control of the government as Tyson, along with the other inmates and unlike more typical Federal Tort Claims Act litigants, was not free—nor did he have the resources—to obtain consultation or treatment by a private physician. Each of the remaining 53 inmates who are plaintiffs

in this action submitted claims for specific amounts ranging from $10,000 to $500,000. These amounts were chosen in an apparently random and arbitrary manner, more to complete the standard claim forms than to set forth realistic damage claims. The determination of damage awards for the physical and psychological injuries suffered by these plaintiffs as a result of the fire was most difficult. As noted in this Court's Memorandum of Decision on the damages phase of the case, these were not ordinary plaintiffs for whom the standard measures of damages, such as lost wages, diminished earning capacity, psychological or physical impairment after the event, could be routinely applied. Each of the plaintiffs in this case was a prison inmate; many (if not all) had histories of drug addiction, making them more susceptible to psychopathology than the general population; most, if not all, had been unable to hold steady jobs before the fire; most, if not all, had been heavy smokers before the fire. The extent to which the fire made these plaintiffs more likely to use drugs, or made it more difficult for them to find and keep steady employment, or exacerbated already existing psychological or physical disorders were matters "scarcely susceptible of definitive proof." Memorandum of Decision, Sept. 27, 1982, p. 3. The claims for specific amounts which were submitted by the other 53 plaintiffs were thus purely speculative and fanciful, particularly since these plaintiffs had virtually no means to obtain independent medical treatment on their own.

■ The inherent difficulties involved in assessing the damages to be awarded to each member of this unique group of plaintiffs were the primary reasons why plaintiffs and defendants sought a judicial determination of damages for the "sample" plaintiffs rather than settlement once liability had been established. Indeed, counsel

---

4. It should be noted that the regulations governing administrative settlement of tort claims against the federal government do not require that a claim be submitted to an agency via Standard Form 95; "other written notification of an incident" is just as adequate. 28 C.F.R. § 14.2(a). *See also Crow v. United States,* 631 F.2d 28, 30 (5th Cir.1980).

for the plaintiffs and the government apparently agreed that the Court's determination of damage awards for the 11 randomly selected plaintiffs, of whom Mr. Tyson was one, might serve as a guidepost for settling the claims of the remaining 43 plaintiffs—a result which apparently has been achieved. Given the highly speculative nature of the demands for a sum certain that were submitted by the other plaintiffs and the inherent difficulty in determining just damage awards in this case, it is abundantly clear to this Court that, even if Tyson had submitted a demand for a "sum certain" as the other 53 plaintiffs did, this case—and Tyson's claim—would have proceeded in precisely the same manner, with the damages claims of representative plaintiffs having to be litigated. Tyson's failure to specify to the Bureau of Prisons how much money he sought for his injuries caused no prejudice to the government, did not preclude or hinder pretrial settlement, nor further congest this Court's docket with "unnecessary" litigation. His sworn statement, submitted to prison authorities, clearly notified the government that he was among the injured and that he believed his injuries were a direct result of the negligence and poor training of prison personnel.[5]

In view of all the circumstances of this case,[6] the Court holds that Mr. Tyson adequately "presented" his claim to the appropriate federal agency and that he sufficiently complied with the prerequisites of 28 U.S.C. § 2675(a)—whether or not they are construed to be jurisdictional in nature.

Therefore, the government's motion to dismiss is denied.

What remains is a determination, based upon the evidence presented to the Court during the damages phase of the litigation, of the amount due Walter Tyson. Hospital and institutional records show that Mr. Tyson had an extremely high level of carbon monoxide in his blood after the fire, was hyperventilating, and complained of insomnia, throat burns, and back and chest pains. However, Mr. Tyson does not appear to suffer any chronic lung or back impairment as a result of the fire. Psychologically, Mr. Tyson was diagnosed by Doctor Zonana as having both acute and chronic Post-traumatic stress disorder, though with a tapering off of symptoms. In the acute phase Mr. Tyson had difficulty sleeping, and had nightmares of a chronic nature. Dr. Zonana found organic impairment of memory, which could have been caused by smoke inhalation. Mr. Tyson is awarded $7,500.

It is SO ORDERED.

---

**5.** The Court notes that the failure to supply an administrative agency with a specific and precise demand for a sum certain in damages has been held in a number of cases to not bar a claimant from pursuing a federal court action when circumstances indicate that no prejudice to the government resulted in such omission. *See, e.g., Williams v. U.S.,* 693 F.2d 555 (5th Cir.1982); *Molinar v. U.S.,* 515 F.2d 246 (5th Cir.1975); *Apollo v. U.S.,* 451 F.Supp. 137 (M.D.Pa.1978); *Mack v. U.S. Postal Service,* 414 F.Supp. 504 (E.D.Mich.1976).

**6.** In addition to all the other circumstances heretofore set forth, it should be noted that Mr. Tyson's complaint was filed in 1979; the government was found liable for Tyson's (as well as the other plaintiffs' injuries) on May 11, 1981; an offer of judgment under Fed.R.Civ. Pro. 68 was apparently made to Tyson before the trial on damages commenced in the Spring of 1982. Tyson's claim was thus pending in federal court for three years before the government filed the instant motion to dismiss—past the time when the statute of limitations would have precluded Tyson from ever pursuing his claim. While the issue of subject matter jurisdiction may be raised at any time, the government's own delinquency in filing its motion simply highlights the lack of prejudice resulting from Tyson's delinquency in making an administrative demand for a sum certain.