**Fred and Bonita BENSCH, et al., Plaintiffs,**

v.

**METROPOLITAN DADE COUNTY, the State of Florida, et al., Defendants.**

No. 90–252–CIV.

United States District Court, S.D. Florida.

May 4, 1992.

Mark V. Silverio, Miami, Fla., for plaintiff.

Stanley J. Niego, West Palm Beach, Fla., for defendants SFWMD and Maloy.

Joani Armstrong Coffey, Asst. State Atty., Miami, Fla., for defendants Metro Dade County.

---

## ORDER

HOEVELER, District Judge.

THIS CAUSE comes before the Court on South Florida Water Management and John Maloy's Motion to Dismiss.

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–2, 2 L.Ed.2d 80 (1957) (footnote omitted). "In ruling on the motion to dismiss, the district court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *St. Joseph's Hospital, Inc. v. Hospital Corp. of America,* 795 F.2d 948, 954 (11th Cir.1986). The Court proceeds guided by these standards.

## I. JOHN MALOY'S MOTION TO DISMISS

The only mention of Mr. Maloy in the Complaint is in paragraph 14: "Defendant John R. Maloy, is an individual, *sui juris,*

residing in and a citizen of Dade County, Florida. He was, at all material times, the Executive Director of the SFWMD." Mr. Maloy argues that the Amended Complaint should be dismissed as to him because: (1) Plaintiffs cannot impute the actions of SFWMD to Maloy; (2) the insubstantial nature of allegations as to Maloy warrant dismissal because of qualified immunity when acting in an executive capacity.

We focus on the question of whether Mr. Maloy is entitled to qualified immunity for his actions as Executive Director of SFWMD. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court established an objective reasonableness test for the imposition of qualified immunity:

> ... [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 817–18, 102 S.Ct. at 2738 (citations omitted).[1] In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411(1985), the Supreme Court reiterated: "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* at 526. In *Nicholson v. Georgia Dept. of Human Resources,* 918 F.2d 145 (11th Cir.1990), the Eleventh Circuit stated:

---

[1.] In *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988), the Eleventh Circuit established a two-part analysis to apply the *Harlow* objective reasonableness test to a qualified immunity defense:

    1. The defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'

    2. Once the defendant public official satisfies his burden of moving forward with the evi-

dence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional law.'

*Courson v. McMillian,* 939 F.2d 1479 (11th Cir. 1991) (quoting *Rich,* 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983) (per curiam) (other citation omitted))).

As presently formulated, [the *Harlow* standard of qualified immunity] serves as a shield to all government officials except the plainly incompetent or those who knowingly violate the law.... Unless it can be said that the state of the law was of such clarity that a reasonable person should have been on notice that his or her conduct was unlawful, that official is entitled to qualified immunity.... In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable.... Instead, the plaintiff must draw the court's attention toward a more particularized and fact-specific inquiry.

*Id.* at 146–47. Although *Nicholson* arose on summary judgment, "[a] defendant may assert his qualified immunity defense, prior to trial, in one of three ways, all of which require the court to consider an issue of law. First, a defendant may move for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim." *Bennett v. Parker*, 898 F.2d 1530, 1535 n. 2 (11th Cir. 1990). Qualified immunity is an affirmative defense, however, so it may only be asserted in a 12(b)(6) motion when the "complaint itself establishes ... qualified immunity." *Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir.1983) (cited in *Bennett*, 898 F.2d at 1535 n. 2).

■ Plaintiffs contend that Mr. Maloy is the director of the agency that allegedly deprived them of their property without due compensation. They argue in their Reply to SFWMD's Motions to Dismiss: "Clearly the right of people to not have land *or* anything taken from them without being duly compensated for it is possibly as clearly established a right as there can be." The Eleventh Circuit has discussed the requirement of particularity in attempting to defeat a claim of qualified immunity:

[t]he words 'clearly established ... constitutional rights' may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms, so that anyone who prevails on the merits of a claim based on (for example) the First Amend-

ment's free exercise of religion clause, however novel that claim is, can defeat the defense of immunity simply by pointing out that the right to the free exercise of one's religion has long been a clearly established constitutional right. The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful.

*Muhammad v. Wainwright*, 839 F.2d 1422, 1425 (11th Cir.1987) (quoting *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986)). Plaintiffs' general statement that people have the right to not have land taken from them without compensation combined with their failure to discuss Mr. Maloy's action (or inaction) with any degree of particularity will not suffice to defeat Mr. Maloy's claim of qualified immunity.

■ In addition, Plaintiffs have failed to state a cause of action against Mr. Maloy under § 1983:

Section 1983 imposes liability for 'conduct which "subjects, or causes to be subjected" the complainant to a deprivation of a right secured by the Constitution and laws.' *Rizzo v. Goode*, 423 U.S. 362, 370–71 [96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976)]. Accordingly, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' [*Mckinnon v. Patterson*, 568 F.2d 930, 936 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).]

*Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). A defendant may be personally involved in a constitutional deprivation via:

(1) direct participation; (2) failure to remedy the wrong after learning about it; (3) creation of a policy or custom under which unconstitutional practices occur; or (4) gross negligence in managing subordinates who caused the violation.

*Gallegos v. Haggerty*, 689 F.Supp. 93, 104 (N.D.N.Y.1988) (citing *Williams*, 781 F.2d at 323–24). Plaintiffs have failed to allege *any* specific action or inaction on the part of Mr. Maloy that caused a deprivation of

their constitutional rights. This is further support for Defendant Maloy's contention that the Complaint should be dismissed as to him.

Accordingly, the Amended Complaint against Mr. Maloy is DISMISSED. The Court takes the approach of *Elliott v. Perez,* 751 F.2d 1472, 1482 (5th Cir.1985) in requiring the Plaintiffs, if they wish and are able, to file a detailed complaint within thirty days of the date of this Order that includes detailed facts supporting the contention that the plea of immunity cannot be sustained. Plaintiffs should be cognizant of the "heightened pleading" requirement of a claim under § 1983.

## II. SFWMD'S MOTION TO DISMISS

SFWMD argues that the Amended Complaint should be dismissed as to it on several grounds: (1) Plaintiffs have failed to state a claim for relief against SFWMD for those matters involving adoption of the Dade County ordinances; (2) the Complaint fails to allege flooding attributable to SFWMD; (3) Plaintiffs have failed to allege a flood taking claim.

### A. Adoption of Ordinances

■ SFWMD argues that the Plaintiffs have presented no claim for relief for matters involving adoption of Dade County ordinances because SFWMD exercised no police power authority in the ordinance adoption process. In addition, SFWMD states that the conspiracy allegations are insufficient because they involve only a single planning meeting held in 1972.

The Plaintiffs contend that SFWMD's conduct is actionable under 42 U.S.C. § 1983 because the Plaintiffs allege that "SFWMD implemented and participated in the enactment of the illegal ordinances," and therefore "acted under color of state law in depriving the plaintiffs of their Fifth and Fourteenth Amendment rights." SFWMD does not deny that it "endorsed the adoption of the subject ordinances in 1981," however it does not agree that it implemented and participated in the enactment of the ordinances. Section B of the Amended Complaint, entitled *The Illegal Ordinances,* discusses Dade County's role in encouraging development in the East Everglades, only to later significantly downzone the area. The first mention of SFWMD in this Section involves a discussion of a December 14, 1972 Workshop Meeting, which took place nine years before the subject ordinances were adopted. The Meeting was attended by approximately thirty five persons including various officials of SFWMD, members of the press, state and federal officials, representatives of environmental groups. The Meeting is referred to in the Complaint as follows:

In December, 1972 at a workshop meeting of the SFWMD attended by various officials of Dade County and defendants, the plan to take plaintiff's property without compensation was discussed in great detail.... Particular references to [the minutes of the meeting] clearly indicate that:

(a) The plaintiffs' private property was to become a state acquired conservation area or federally acquired national park, part of the Everglades National Park;

(b) The plaintiffs' property was to be 'acquired' without purchase by the defendants;

(c) The plaintiffs' property was to be controlled by 'flowage easements';

(d) The plaintiffs' property was not critical to the water supply of the county or district, but nonetheless was to be acquired as a 'buffer' to the Park.

A review of the minutes of the Workshop Meeting reveals a general discussion of policy options available to the District, including the possibility of purchase of the land in question. No policy resolutions appear to have been made at the meeting.

The only other mention of SFWMD in this Section of the Amended Complaint is mention of a letter dated February 5, 1981 from Defendant Sam Poole of the Dade County Planning Department to Peter Rhoades of SFWMD. The letter discusses the Planning Department's efforts to provide flood protection for Plaintiffs' property, although allegedly at the same time, "defendants were conspiring to effect the 1 in 40 downzoning.... Defendants, none-

theless, rejected these recommendations and plans, and instead imposed the unconstitutional downzoning on plaintiffs' property."

"Section 1983 plaintiffs must establish both deprivation of a right secured by the United States Constitution or federal laws and action by a defendant under color of state law." *Motes v. Myers,* 810 F.2d 1055, 1058 (11th Cir.1987) (citations omitted). The plaintiff must provide clear proof of "an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.1982) (citations omitted), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983).

Here, Plaintiffs have not adequately alleged a causal connection between the actions of SFWMD in relation to the enactment of the ordinances in question and their alleged suffering of a constitutional deprivation. "Something more ... than simple endorsement and encouragement of legislation that turns out to be unconstitutional is a necessary element of a section 1983 claim based upon a conspiracy theory." *Culebras Enterprises Corp. v. Rios,* 813 F.2d 506, 519 (1st Cir.1987) (citation omitted); *see also, Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir.1984) (citations omitted) ("In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed.") Accordingly, the Section 1983 claim against SFWMD with respect to the illegal enactment of ordinances is DISMISSED without prejudice. If Plaintiffs are able to more directly allege a causal link between SFWMD and the enactment of the allegedly illegal ordinances, they may do so by filing a repleaded complaint.

A cause of action under 42 U.S.C. § 1985(3) requires:

> intent to deprive of *equal* protection, or *equal* privileges and immunities, mean[ing] that there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind

the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). No allegation of such a class-based animus is present in this case. Accordingly, the § 1985(3) claim against SFWMD is DISMISSED without prejudice. If Plaintiffs are able to allege a class-based animus, they may do so in a repleaded complaint.

42 U.S.C. § 1985(2) creates a cause of action against parties who conspire to interfere with the judicial process. Because no such allegation is present, this claim is also DISMISSED without prejudice. If Plaintiffs are able to allege such a cause of action, they may do so in a repleaded complaint.

### B. Failure to Establish a Flood Taking Claim

■ SFWMD also contends that the Complaint fails to allege flooding attributable to SFWMD. SFWMD argues that the real party in interest is the Army Corp of Engineers, because the Corp establishes the overall water management policy for the District. The Complaint alleges that the District was created to coordinate and implement Corps projects to prevent flooding in South Florida. The Complaint also claims that the District proposed emergency relief measures for Everglades Park, which resulted in flooding of Plaintiffs' lands. SFWMD argues that the Corps is the proper party from whom Plaintiffs must seek redress (in the United States Court of Claims) because the emergency measures had to be approved ultimately by the Corps: "The role of SFWMD, as alleged, is one of making recommendations and implementing federal operational directives pursuant to the requirements of federal law." Even if SFWMD must comply with an overall federal operational directive, SFWMD has failed to show that it cannot be sued in its own right. SFWMD's citation to federal regulations (33 C.F.R. § 208.10) regarding the operation and maintenance requirements of local spon-

sors of Corps flood control projects does not persuade the Court. Therefore, the Court will not dismiss the Complaint on this basis.

In addition, SFWMD asserts that Plaintiffs, while asserting that they have suffered damages from flooding, have failed to allege that the flooding is due to affirmative government action, as opposed to natural causes: "A reading of the complaint shows that the plaintiffs are actually aggrieved as a result of a withdrawal of and/or failure to provide flood protection benefits, which, if true, is a discretionary governmental decision, and not a taking of private property."

SFWMD cites *Creppel v. U.S. Army Corps of Engineers*, 500 F.Supp. 1108 (E.D.La.1980); *rev'd in part*, 670 F.2d 564 (5th Cir.1982), as support for the proposition that a withdrawal of proposed flood protection benefits is not actionable. In *Creppel*, the United States Army Corp of Engineers withdrew a proposed plan that would have benefited landowners by draining their property via a proposed pumping station. The Corps completed Phase I of a flood control plan, but did not complete Phase II construction because of non-compliance with the Clean Water Act. The court found that the Corps was not prohibited from altering its plans: "An agency is not forever bound by its prior determinations for they are neither congressional directives nor scriptural admonitions. Moreover, an agency may adjust its policies and rulings in the light of its experience." *Creppel*, 670 F.2d at 571 (citation omitted).

In *United States v. Sponenbarger*, 308 U.S. 256, 60 S.Ct. 225, 84 L.Ed. 230 (1939), a landowner sued the government for increasing the risk of flooding to her property. The Court found that there had always been flooding in the alluvial valley of Mississippi River. Therefore, any loss in market value was not due to any action of the government:

> An undertaking by the Government to reduce the menace from flood damages which were inevitable but for the

Government's work does not constitute the Government a taker of all lands not fully and wholly protected. When undertaking to safeguard a large area from existing flood hazards, the Government does not owe compensation under the Fifth Amendment to every landowner which it fails to or cannot protect.

*Id.* at 265, 60 S.Ct. at 228. At this stage in this litigation, i.e. Motion to Dismiss, the Court cannot determine whether *Sponenbarger* applies. In *Sponenbarger*, the Plaintiff's land was in the path of a diversion channel or floodway that had "always been a natural floodway for waters from the Mississippi [River]," so that her land was "repeatedly overflowed by deep water" both before and after the government took action. *Id.* at 263, 60 S.Ct. at 227–28. The Court will have to await a showing by Defendants that flooding was inevitable on Plaintiffs' lands whether or not the government acted in order to determine whether *Sponenbarger* applies.

■ SFWMD claims: "It was a logical extension of *Sponenbarger* and *Creppel* to conclude that no taking had occurred where the government had modified a flood control project to eliminate drainage benefits, which it had no duty to provide in the first instance." While the Court agrees with this assertion, we cannot conclude at this stage in the litigation (i.e. Motion to Dismiss), that it applies in this case. In Paragraph 22 of the Amended Complaint, Plaintiffs assert that: "Plaintiffs and their private property were clearly in the way of the eastern alignment scheme to divert water to the east outside of the Park's boundaries and across plaintiffs' lands." Because Plaintiffs are asserting that Defendants affirmatively diverted water onto their land (rather than asserting that Defendants simply modified a flood control project for lands that may or may not have been historically under water), the Court cannot agree with SFWMD that the Amended Complaint should be dismissed for this reason.[2]

---

2. In its Reply Memorandum, SFWMD "suggests that the complaint should not be dismissed on

[the basis of failure to allege flooding in excess

### C. No Allegation of Substantial Ouster

SFWMD asserts that the Plaintiffs have failed to allege a substantial ouster and therefore, "the plaintiffs may have alleged a tort, but not a taking."

"To constitute a compensable taking by inverse condemnation where no permanent flooding is involved, proof of *frequent* and *inevitably recurring* inundation due to governmental action is required.... Government-induced flooding not shown to be inevitably recurring occupies the category of mere consequential injury or tort." *Pinkham v. Lewiston Orchards Irrigation Dist.*, 862 F.2d 184, 189 n. 5 (9th Cir.1988) (citations omitted).[3] "The cases disclose the rule that the permanent, intermittent flooding which amounts to a taking must be frequent ... and productive of substantial damage." *Barnes v. United States*, 538 F.2d 865 (Ct.Cl.1976).

The Court notes that the Amended Complaint in Paragraphs 7 and 9 states that some of the plaintiffs reside in homes or operate businesses on the lands in question, however, Paragraph 32 states:

> [T]he substantial increase in groundwater levels and flood damage have: driven plaintiffs' land values toward zero; prevented them from obtaining financing or from selling their property; and damaged their roads, personal property, trees and other land improvements. Furthermore, the frequent flooding coupled with plaintiffs' inability to put in fill (because of defendants' actions) have denied plaintiffs access to their property.

It appears that the above Paragraph of the Complaint meets the standard (at least enough to withstand a Motion to Dismiss) for a taking by flooding: the Plaintiffs have asserted that there is frequent flooding of their lands due to governmental action that has produced substantial damage. Therefore, the Motion to Dismiss the takings claim under the Fifth Amendment

through the Fourteenth Amendment is DENIED.

## III. CONCLUSION

Based on the foregoing, the Amended Complaint against John Maloy is hereby DISMISSED. Plaintiffs, if they wish and are able, may file a detailed complaint within thirty (30) days of the date of this Order that includes detailed facts supporting the contention that Mr. Maloy's immunity cannot be sustained.

In addition, the § 1983, § 1985(2), and § 1985(3) claims against SFWMD are DISMISSED without prejudice. If Plaintiffs are able to comply with the pleading requirements outlined above, they may do so within thirty (30) days of the date of this Order in a repleaded complaint.

The remainder of SFWMD's Motion to Dismiss discussing failure to establish a flood taking claim and failure to allege a substantial ouster is DENIED.

DONE AND ORDERED.

---

of the pre-project condition]." The Court concurs.

**3.** An inverse condemnation suit is a "shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke*, 445 U.S. 253, 255, 100 S.Ct. 1127, 1129, 63 L.Ed.2d 373 (1980).