**David BERNARD, Plaintiff,**

v.

**Edward CALEJO, et al., Defendants.**

**No. 97–2859–CIV.**

United States District Court,
S.D. Florida.

April 17, 1998.

Mark Mintz, North Miami, FL, for Plaintiff.

E. Bryan Wilson, U.S. Dept of Justice, Office of the U.S. Attorney, Tallahassee, FL, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendants Edward Calejo ("Calejo"), German Rosa ("Rosa"), Janet Reno, Thomas Scott, Robert Wallis, in their official capacities, (collectively "individual Defendants in their official capacities") and the United States of America's Motion to Dismiss, filed December 22, 1997. Plaintiff filed a response on March 30, 1998.

## Factual Background

The following allegations contained in Plaintiff's Complaint have been stipulated to by Calejo's attorney, the Assistant U.S. Attorney, the Assistant Attorney General, and the Attorney for the Civil Rights Division of the Department of Justice: In September 1993, Plaintiff, a Haitian national, was a non-criminal alien detainee at the Immigration and Naturalization Service's ("INS") Krome Detention Center ("Krome"). On September 9, 1993, during mealtime, one of the cafeteria servers requested that Plaintiff go behind the food counter to retrieve his meal. Calejo, a detention enforcement officer ("DEO") at Krome, verbally reprimanded Plaintiff for violating the rules prohibiting detainees from going behind the food counter. After mealtime, an unnamed supervisor instructed Calejo and Rosa, another DEO, to take Plaintiff to a small cell in back of building eleven for "counseling." Calejo and Rosa took Plaintiff to that cell. Once inside, without provocation, Calejo repeatedly punched and kicked Plaintiff. Calejo hit Plaintiff's head so hard that Calejo broke his hand. Plaintiff tried to flee the cell but another guard pushed him back inside. Several other DEOs were present but none intervened. During the attack, Calejo continually made racial slurs to Plaintiff, including "Damn Haitians don't have no rights here."

The beating rendered Plaintiff unconscious. When he awoke several hours later, he had significant lacerations, severe bruises, a herniated disc, and neurological damage. Plaintiff's injuries are permanent. In an effort to cover up the incident by showing Plaintiff to be the aggressor, Calejo persuaded other guards to punch him in the chest and photograph the resulting injury. Calejo also attempted to convince Rosa to support this false version of events to the FBI. Calejo went so far as to make a worker's compensation claim after the incident.

Ultimately the FBI received information about the cover-up and the government issued an indictment against Calejo, charging him with, among other things, federal civil rights violations, lying to FBI agents, attempting to get witnesses to lie, and filing a false claim for injuries. Calejo was adjudicated guilty of violating Plaintiff's civil rights and sentenced accordingly, pursuant to 18 U.S.C. § 242, on January 4, 1996.

Although Defendants' counsels have not stipulated to the following facts, Plaintiff further alleges that there is evidence that supervisory personnel at Krome knew of Calejo's violent nature prior to the incident. There is also evidence that Calejo's supervisors knew he had explosive tendencies and that he had previous altercations with other detainees. Immediately after Plaintiff's beating, the Chief DEO ordered his subordinates to falsify documents to protect Calejo.

On September 1, 1995, Plaintiff's counsel sent a two page letter to the INS detailing the incident with Calejo and copied the letter to Attorney General Janet Reno and former U.S. Attorney Kendall Coffey. In addition to a detailed description of the events, Plaintiff's counsel wrote:

> Mr. Bernard was rendered unconscious by the vicious beating and woke up four hours later with lacerations, severe bruises, a herniated disc and apparent neurological deficits. As a result of his injuries, Mr. Bernard, a previously active and healthy man of 35 years, has been totally disabled and has continuing and permanent pain, disfigurement and disability.

> At the time of the acts complained of, Calejo, his supervisor and the other guards acted under color of law and were placed in a position of control over Mr. Bernard by virtue of their employment of by the United States Government. The United States Government, the Justice Department, and the Immigration and Naturalization service are hereby notified of Mr. Bernard's claims.

(Defs.' Mot. to Dismiss, Ex. A., at 2).

On September 7, 1997, Plaintiff filed a four count Complaint in this Court seeking relief for: (1) violation of his constitutional rights, pursuant to 42 U.S.C. § 1983 and *Bivens v.*

*Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); (2) violation of his civil rights, pursuant to 42 U.S.C. § 1981; (3) violation of his civil rights, pursuant to 42 U.S.C. § 1985; and (4) various torts, pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* (labeled by Plaintiff as "Pendent Jurisdictional Claims").

### Legal Standard

Dismissal is justified only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 810, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980)). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

### Discussion

#### A. Counts I–III: Section 1983, Bivens, Section 1981, and Section 1985 claims

■ Defendants contends and Plaintiff concedes that Plaintiff's claims for relief under section 1983, *Bivens,* section 1981, and section 1985 should be dismissed.

■ It is clear that Plaintiff cannot maintain his section 1983 or *Bivens* claim. Section 1983 provides a cause of action against an individual acting under color of state law who violates another's constitutional rights. 42 U.S.C. § 1983. A necessary element of the claim is that the defendant act under color of state law. *See Broadway v. Block,* 694 F.2d 979, 981 (5th Cir.1982). Because federal officials do not act under color

of state law, plaintiffs may not properly bring a section 1983 claim against them. *See Seibert v. Baptist,* 594 F.2d 423, 429 (5th Cir. 1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *Mack v. Alexander,* 575 F.2d 488, 489 (5th Cir.1978). In addition, section 1983 does not contain an express waiver of sovereign immunity and thus does not provide a cause of action against the United States or federal employees acting in their official capacities. *Davis v. United States,* 439 F.2d 1118, 1119 (8th Cir.1971). Plaintiff's *Bivens* claim, which is predicated on constitutional violations, also appears to be barred by sovereign immunity. *See Boda v. United States,* 698 F.2d 1174, 1176 (11th Cir.1983) (constitutional claims against federal employees in their official, as opposed to individual, capacities are barred by sovereign immunity). Moreover Plaintiff cannot maintain these claims against the Defendants with no personal involvement, as a plaintiff may not base either a section 1983 action or a *Bivens* action on the theory of respondeat superior. *See Jasinski v. Adams,* 781 F.2d 843, 848 (11th Cir.1986) (*Bivens* ); *Bensch v. Metropolitan Dade County,* 798 F.Supp. 678, 680–81 (S.D.Fla. 1992) (section 1983) (citing *McKinnon v. Patterson,* 568 F.2d 930, 936 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). Consequently, Count I of Plaintiff's Complaint must be dismissed.

■ Plaintiff's section 1983 and 1985 claims must also be dismissed. As with section 1983, section 1981 does not contain an express waiver of sovereign immunity and thus may not be used against the United States, *see United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir.1982), or federal employees acting in their official capacities, *see Penn v. Schlesinger,* 490 F.2d 700, 703 (5th cir.1973), *rev'd on other grounds,* 497 F.2d 970 (5th Cir.1974). Likewise, Plaintiff's section 1985 claim is barred by sovereign immunity. *See Unimex, Inc. v. U.S. Dept. of Housing & Urban Devel.,* 594 F.2d 1060, 1061–62 (5th Cir.1979). Moreover, Plaintiff cannot bring suit against those Defendants not personally involved in the incident under

section 1981 or 1985, as these statutes do not provided a cause of action for claims based on the theory of respondeat superior. *See Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (no respondeat superior liability in civil rights cases); *Boykin v. Bloomsburg Univ.*, 893 F.Supp. 400, 406 (M.D.Pa.995) (§ 1981), *aff'd*, 91 F.3d 122 (3d Cir.1996), *cert. denied sub nom, Mirin v. Eyerly*, —— U.S. ——, 117 S.Ct. 739, 136 L.Ed.2d 678 (1997). As a result, Counts II and III of Plaintiff's Complaint must also be dismissed.

### B. *Count IV: Tort Claims*

 Defendants assert that Plaintiff's tort claims are barred because Plaintiff failed to exhaust administrative remedies, as required by the FTCA. The FTCA contains an express waiver of sovereign immunity for the purposes of bringing tort actions against the United States, *see Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir.1994), and provides the sole remedy for torts committed by the United States and federal employees acting in their official capacities, *see Brown v. Armstrong*, 949 F.2d 1007, 1012–13 (8th Cir. 1991). Section 2675(a) of the FTCA provides that an administrative claim must be filed with the appropriate agency before a suit can be initiated under the FTCA. 28 U.S.C. § 2675(a). The regulations to the FTCA provide that such a claim should be "accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 31 C.F.R. § 3.2(a); *see also* 28 C.F.R. § 14.2(a). This "sum certain" requirement is a prerequisite to district court jurisdiction over an FTCA claim, such that failure to include the prayer for money damages in the administrate claim divests a district court of jurisdiction over a subsequent case. *See Suarez*, 22 F.3d at 1065. The question is, therefore, whether Plaintiff's FTCA claims are barred for failure to state a "sum certain." The Court finds that, in light of the totality of the circumstances surrounding Plaintiff's claim letter to the INS, Plaintiff's FTCA claims are not barred.

The policies behind the FTCA's administrative requirements are twofold: First, to "ease court congestion and avoid unnecessary litigation, while making it possible for the government to expedite the fair settlement of tort claims asserted against the United States," and second, to provide "for more fair and equitable treatment of private individuals and claimants when they are ... involved in litigation with their government." S.Rep. No. 1327, 89th Cong., 2d Sess., 1966 U.S.C.C.A.N., at 2515–16. The law of this Circuit takes a liberal approach to the sum certain requirement. As the Eleventh Circuit has observed:

> This circuit has taken a somewhat lenient approach to the "sum certain" requirement holding, for example, that even where a claimant had not specifically stated the value of the claim, attaching medical bills and repair estimates to the claim notice could suffice. *See Molinar v. United States*, 515 F.2d 246 (5th Cir.1975). *See also Wardsworth v. United States*, 721 F.2d 503, 505–06 (5th Cir.1983) (discussing sum certain requirement, and indicating that it could be met by merely providing the agency with facts from which it could estimate the value of the claim), *cert. denied*, 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984).

*Tidd v. United States*, 786 F.2d 1565, 1567 n. 6 (11th Cir.1986); *see also Adkins v. United States*, 896 F.2d 1324, 1326 (11th Cir.1990) ("this Circuit takes a somewhat lenient approach to the 'sum certain' standard").

In concluding that Plaintiff's tort claims are not barred, the Court finds significant the lack of any evidence that the government followed up on Plaintiff's letter to the INS by sending him a Standard Form 95 "Claim for Damage or Injury" or otherwise informing him that further information was required. In *Molinar v. United States*, 515 F.2d 246 (5th Cir.1975), the plaintiff, who brought suit against the United States and Federal Aviation Administration ("FAA"), had initially sent a letter to the Motor Fleet Manager of the General Services Administration in El Paso, Texas demanding compensation for

"property damage and personal injury." *Id.* at 247. Attached to the claim were medical bills, including unrelated bills for his wife's surgery, and repair estimates. The information was eventually forwarded to the FAA who then sent Plaintiff a Standard Form 95. *Id.* at 247–48. The Standard Form 95 provides a space labeled "Amount of Claim (in dollars)." *See Wardsworth v. United States,* 721 F.2d 503, 504 (5th Cir.1983). The plaintiff filled out the Standard Form 95, including the amount of claim, but failed to file it within the two year statutory period. *Molinar,* 515 F.2d at 248. The Fifth Circuit found that Plaintiff's initial letter and attachment constituted an adequate sum certain, observing:

> [T]he officer authorized the forwarding of a copy of Form 95, with less than 30 days remaining in the statutory two-year period. That form nowhere mentions the two-year period, nor does it specify that the claimant must claim a "sum certain" within two years. Yet this form is the standard vehicle by which the government reviews claims, both those made by the general public and those made by attorneys on behalf of their clients.

> In view of these deficiencies in Form 95, we are inclined to view the original claim as one for a "sum certain". . . .

*Id.* (citations omitted)

The clear policy advanced by the Fifth Circuit is that although plaintiffs have a responsibility to initially attempt to comply with administrative requirements, the government is also under an obligation to communicate with claimants and investigate claims in good faith. *See id.* at 250 (distinguishing *Bialowas v. United States,* 443 F.2d 1047 (3d Cir.1971) on the grounds that in that case, claimant failed to "supplement the claim pursuant to *specific suggestions* from the relevant agency") (emphasis added). Because the policies behind the "sum certain" requirement are prompt administration and settlement as well as fairness to claimants, the government should attempt to put the claimant on notice that a dollar amount must

be specified when the government determines that the claim letter does not adequately state a "sum certain." The government may accomplish this by either sending the claimant a Standard Form 95 or otherwise notifying him that specifying a sum is required. As the Eleventh Circuit has observed:

> A federal court's power to adjudicate a tort claim brought against the United States depends solely on whether the claimant has previously complied with the minimal requirements of the statute. Federal court power does not depend on whether a claimant has successfully navigated his or her way through the gauntlet of the administrative settlement process, which, according to the vagaries of the claims agent, may touch picayune details, imponderable matters, or both.

*Tidd,* 786 F.2d at 1567 (citations omitted). Placing the extremely light burden on the government of notifying claimants of the failure to meet the "sum certain" requirement is eminently reasonable given the vast disparity in knowledge between the government, which is acutely aware of the technicalities of administrative requirements, and a claimant who likely knows little of administrative details.

Indeed, the more recent, and arguably stricter, Eleventh Circuit cases do not contradict the conclusion that the government has some obligation to inform a claimant that his claim is deficient, even if it is as minimal as sending a Standard Form 95. In *Adkins,* 896 F.2d 1324, for example, the plaintiff filled out a Standard Form 95, but specified that the personal injuries amount would be determined at a later date. The Eleventh Circuit held that the plaintiff's personal injury claims were barred, observing that *"[a]lthough promptly and specifically invited to do so by the Postal Service,* plaintiffs provided nothing to the Government within the period prescribed by the statute that would have permitted a reasonable estimate of the value of their claim, or even a speculative guess as to the seriousness of their injuries." *Id.* at 1325 (emphasis added). Likewise, in *Suarez*

*v. United States*, 22 F.3d 1064 (11th Cir. 1994), the plaintiff sent a letter to the U.S. Marshal's service that did not contain a "sum certain." The "Marshal's service sent [the plaintiff] a letter, informing him that he was required to submit a Standard Form 95, which was included, and to state a sum certain in damages." *Id.* at 1065. The plaintiff returned the form with the word "unliquidated" written in the space for amount of damages. The court held that the plaintiff's claim was barred, noting that "[i]t is undisputed that [the plaintiff] failed, both in his initial letter to the government and in his later Form 95, to submit a sum certain for damages." *Id.*

In the instant case, Plaintiff's counsel sent a very detailed letter to the INS. It specifically described the injuries Plaintiff sustained and the disabilities he continues to suffer. This clearly put the government on notice as to the "seriousness of [Plaintiff's] injuries." *Adkins*, 896 F.2d at 1325. Rather than sending Plaintiff a Standard Form 95, which would have put him on notice that a dollar amount must be specified, the INS allowed Plaintiff to believe that he had made a valid claim under the FTCA. Without presenting any evidence that it attempted to elicit more information about Plaintiff's case, investigated the case, or made steps toward settlement, the government now moves to dismiss Plaintiff's claims on the ground that it did not have enough information about Plaintiff's damages. The Court will not advance the policy of authorizing the government to lead unwitting tort claimants blindly down the pathway toward dismissal. To allow such action by the government would serve neither the policies behind the sum certain requirement nor the interests of justice.

The Court also observes that Plaintiff's status as a ward of the government, the FBI investigation, and the previous criminal case against Calejo should have put the government on notice of Plaintiff's claims and the extent of the injuries he suffered. In *Williams v. United States*, 693 F.2d 555 (5th Cir.1982), the plaintiff failed to specify a sum certain on his Standard Form 95. The Court nonetheless found the jurisdictional requirements were met because a previous state court lawsuit filed by the plaintiff "apprised [the government] of the specifics of that claim." *Id.* at 558.

A comparable result was reached in *Blue v. United States*, 567 F.Supp. 394 (D.Conn. 1983), the facts of which are quite similar to the case at bar. The plaintiff in *Blue*, a federal prisoner, suffered injuries from a fire at the prison. The Plaintiff did not file a Form 95, but did provide a sworn statement to a caseworker at the prison. Although the statement contained a description of the injuries caused by the fire and an assertion that the fire was caused by the negligence of prison officials, it did not contain a "sum certain." *Id.* at 396. In concluding that the plaintiff's subsequent lawsuit was not barred for failure to exhaust administrative remedies, the court took into account the facts that "two separate federal investigations of the causes and consequences of the fire were conducted," "the plaintiff was at all relevant times a ward of the government [so] the fact, nature and extent of his injuries were well known to the government," and "[h]is sworn statement, submitted to prison authorities, clearly notified the government that he was among the injured and that he believed his injuries were a direct result of the negligence and poor training of prison personnel." *Id.* at 396–98.

In the instant case, Plaintiff was a ward of the federal government at the time of his injuries. In addition, the incident giving rise to Plaintiff's complaint was the subject of an FBI investigation and a subsequent federal criminal case. Finally, Plaintiff's very detailed letter to the INS clearly notified the government of the extent of Plaintiff's injuries and permanent damage. *Cf. Wardsworth*, 721 F.2d at 506 (finding claim barred only after court "searched the record in vain for any shred of evidence that [plaintiff] provided the Postal Service with facts from which it could have estimated the value of her claim"). The Court finds that the government was well aware of the nature of

Plaintiff's case, the extent of Plaintiff's injuries, and the value of Plaintiff's claims. The Court agrees with the district court in *Blue* that:

> given the particular facts of this case, to grant the government's motion to dismiss on the sole ground that this plaintiff failed to submit a demand for a sum certain in damages would work a grave injustice, elevate form over substance, and subvert the beneficial purpose of § 2675(a) to provide 'for more fair and equitable treatment of private individuals and claimants when they … are involved in litigation with their government.'

567 F.Supp. at 398 (quoting S.Rep. No. 3127 *supra*, at 2515–16).

### Conclusion

Consequently, the Court's ruling that, given the particular facts of this case, Plaintiff has fulfilled the "sum certain" requirement by giving "[n]otice in such a form complies with the spirit of" this Circuit's prior rulings and the policies behind the administrative procedures of the FTCA. *Williams*, 693 F.2d at 558. Accordingly, after a careful review of the record, and the Court being otherwise fully informed, it is

ORDERED, ADJUDGED, and DE-CREED that Defendant's Motion to Dismiss be, and the same is hereby, GRANTED with respect to Counts I–III of Plaintiffs Complaint. It is further

ORDERED, ADJUDGED, and DE-CREED that Defendant's Motion to Dismiss be, and the same is hereby, DENIED with respect to Count IV, the "Pendent Jurisdiction Claims." It is further

ORDERED, ADJUDGED, and DE-CREED that Counts I–III of Plaintiff's Complaint be, and the same are hereby, DISMISSED as to all individual Defendants in their official capacities, the INS, and the United States. Counts I–III remain pending as to Defendants Edward Calejo, German Rosa, Unnamed Supervisor of the Krome Avenue Detention Center, and Unnamed De-

tention Enforcement Officers of the Krome Avenue Detention Center, in their individual capacities. It is further

ORDERED, ADJUDGED, and DE-CREED that Defendants shall file an Answer within twenty (20) days from the date of this Order.